# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# EASTERN DIVISION

EDWARD GARLOCK                                                                          PLAINTIFF
Reg. #25750-045

v.                                        2:16cv00148-BSM-JJV

VIRGINIA LOCKEY, R.N.,
Forrest City Medium FCI; *et al.*                                                    DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to Chief United States District Judge Brian S. Miller. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before either the District Judge or Magistrate Judge, you must, at the time you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence to be proffered at the new hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The details of any testimony desired to be introduced at the new hearing in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing. Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

**DISPOSITION**

**I. INTRODUCTION**

Edward Garlock ("Plaintiff") is a federal inmate at the United States Penitentiary - McCreary in Pine Knot, Kentucky. (Doc. No. 2 at 3.) At the time of the events giving rise to this cause of action, he was incarcerated at the Forrest City Medium Federal Correctional Institution ("FCI"). (*Id*. at 4.) Plaintiff filed this *pro se* action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and the Federal Tort Claims Act ("FTCA"), claiming Defendants, the United States of America and four registered nurses employed at Forrest City Medium FCI, failed to properly treat a laceration to his finger that ultimately became infected. (*Id*. at 4-7.) The four nurses, Defendants Virginia Lockey, R.N.; Melissa Loveday, R.N.; Karin Cunningham, R.N.; and Sandra Futrell, R.N.; have filed a Motion for Summary Judgment

raising a number of defenses, including failure to exhaust administrative remedies. (Doc. No. 21.) Plaintiff has not responded to this Motion, and the time for doing so has passed. The United States has also filed a Motion for Summary Judgment, asserting it is entitled to judgment as a matter of law on Plaintiff's FTCA claim. (Doc. No. 33.) Again, Plaintiff has not responded and the time for doing so has passed.

Plaintiff's official capacity claims against Defendants Lockey, Loveday, Cunningham, and Futrell have already been dismissed. (Doc. No. 45.) His *Bivens* claim against the United States has also been dismissed. (*Id.*) After careful consideration of the pleadings, for the following reasons, I find summary judgment is appropriate on all remaining claims and this action should be DISMISSED.

**II.    FACTS**

Plaintiff says that on April 24, 2015, while incarcerated at FCI-Forrest City, "I accidentally lacerated my left index finger." (Doc. No. 2 at 4.) He was immediately sent to the medical clinic where he was examined by Defendant Cunningham. (*Id.*) The laceration, a five-millimeter long superficial cut, was cleaned and bandaged by Defendant Cunningham. (*Id.*) Plaintiff requested a "lay-in" for the next two days so he would not have to work in the kitchen, but Defendant Cunningham denied this request and counseled Plaintiff on proper wound care. (*Id.*)

Plaintiff returned to the medical clinic on April 27, 2015, because his finger was not improving. (*Id.*) Defendant Lockey bandaged his finger and sent him back to general population. (*Id.*) Later that day, Plaintiff showed his finger to a recreation officer, who

3

sent Plaintiff back to medical. (*Id.*) Plaintiff was then seen by Defendant Futrell, who advised Plaintiff to return to the medical clinic the next morning. (*Id.*)

On the morning of April 28, 2015, Plaintiff returned to the clinic. (*Id.*) Plaintiff alleges that when he arrived at the clinic he spoke with Defendants Lockey and Loveday, both of whom "gave him a hard time and threatened to send him to the Lieutenant's bench." (*Id.*) Plaintiff's finger was swollen and draining pus. (*Id.*) Defendant Lockey cleaned and bandaged the wound and attempted to send Plaintiff on his way. (*Id.*) Plaintiff refused to leave the medical clinic and requested to see a doctor. (*Id.*) Awd Rame, M.D., examined Plaintiff and prescribed Bactrim and Doxyclycline for cellulitis and an abscess of the finger. (*Id.*) Dr. Rame also ordered that the wound be dressed daily. (*Id.*) Plaintiff alleges he never received the prescriptions for Bactrim or Doxyclycline, and was only given two Doxyclycline tablets that day. (*Id.*)

Plaintiff returned to see Dr. Rame on April 29, 2015, and received two "Cipro" pills. (*Id.*) Dr. Rame instructed Plaintiff to return to the clinic the following day to see Martin Tindell, M.D. (*Id.*) On April 30, 2015, Dr. Tindell examined Plaintiff and was concerned about his finger so he referred him to an outside doctor, Henein Iskander, M.D. (*Id.*) Dr. Iskander came to FCI-Forrest City and examined Plaintiff that afternoon. (*Id.*) Dr. Iskander was concerned about the finger and ordered Plaintiff to Forrest City Medical Center's emergency room where he was admitted to the hospital. (*Id.*) On May 4, 2015, doctors performed a finger incision, drained the finger, and treated Plaintiff with a regimen of intravenous antibiotics. (*Id.* at 9.) Plaintiff was discharged from the hospital on May 11, 2015. (*Id.*) A contract surgeon saw Plaintiff on May 19, 2015. (*Id.*) An MRI

showed abnormal findings in the bone of the left index finger, so Plaintiff was sent to Delta Medical Center and treated with a month-long regimen of intravenous antibiotics. (*Id.*) The surgeon believed the finger could improve, but Plaintiff was afraid for his own safety because his dysfunctional finger might leave him unable to defend himself; therefore, Plaintiff wanted the finger amputated. (*Id.* at 10.) Plaintiff ultimately had his left index finger amputated on June 3, 2015, against the advice of the surgeon. (*Id.* at 9.)

### III. SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A).

When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is

5

genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

IV. **ANALYSIS**

    A. **Defendants Lockey, Loveday, Cunningham, and Futrell**

        1.    Failure to Exhaust Administrative Remedies

Defendants Lockey, Loveday, Cunningham, and Futrell first argue summary dismissal is appropriate because Plaintiff failed to exhaust his administrative remedies before filing this lawsuit. (Doc. No. 22 at 4-6.) The failure to exhaust administrative remedies is an affirmative defense that the defendant has the burden of pleading and proving. *Nerness v. Johnson*, 401 F.3d 874, 876 (8th Cir. 2005). The Prison Litigation Reform Act ("PLRA") requires an inmate to exhaust prison grievance procedures before filing suit in federal court. *See* 42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 202 (2007); *Jones v. Norris*, 310 F.3d 610, 612 (8th Cir. 2002). The PLRA's exhaustion provision specifically provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory. *Jones v. Bock*, 549 U.S. at 211; *Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003). "[T]he PLRA's exhaustion requirement applies to all

6

inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The PLRA does not prescribe the manner in which exhaustion occurs. *See Jones v. Bock*, 549 U.S. at 922-23. The PLRA merely requires compliance with prison grievance procedures to properly exhaust. *Id*. Thus, the question as to whether an inmate has properly exhausted administrative remedies will depend on the specifics of that particular prison's grievance policy. *Id*. at 923-24.

The Bureau of Prisons ("BOP") Administrative Remedy Program allows inmates to seek formal review of issues related to any aspect of their confinement. 28 C.F.R. § 542.10. Inmates must first seek informal resolution by presenting the issue to the prison's staff. 28 C.F.R. § 542.13. If the inmate is not satisfied with informal resolution, the inmate may submit a Request for Administrative Remedy to the Warden. *Id.* If the Warden's response fails to satisfy the inmate, the inmate is given twenty days to file an appeal with the Regional Director. 28 C.F.R. § 542.15. If still dissatisfied, the inmate may file an appeal to the General Counsel - the final step in the administrative remedy process. *Id.*

Defendants state, "According to the BOP's SENTRY records, Garlock has filed 5 administrative remedy requests since his incarceration . . . However, none of the administrative requests concern the issues presented in this suit." (*Id.*) Thus, Defendants argue, Plaintiff has failed to meet his administrative requirements prior to filing suit, and his Complaint must be dismissed. (*Id.*)

7

In support of their Motion, Defendants have provided the Declaration of Andrea Brooks-Smith, the Associate Warden's Secretary. (Doc. No. 23-1.) She states part of her duties "is the preparation of responses to Administrative Remedy Requests from inmates." (*Id.* at 1.) She states, "The Plaintiff has filed five Administrative Remedy Requests or Appeals since his incarceration within the Bureau of Prisons. None of the Administrative Remedy Claims concerns the issues he has raised in the current lawsuit and he has not exhausted any of the claims that he has raised." (*Id.* at 4.) Ms. Brooks-Smith has also provided the documentation from the Sentry documentation system confirming Plaintiff has not sought any administrative remedies regarding his finger. (*Id.* at 6-11.)

After careful review of the Motion and supporting documents, I find Plaintiff has failed to exhaust his administrative remedies before filing this lawsuit. Plaintiff never grieved any issue concerning treatment of his finger laceration, infection, and subsequent amputation.

I realize Plaintiff's allegations are serious and he may perceive the exhaustion requirement to be some unfairly technical "gotcha" mechanism to keep him out of court. To the contrary, the exhaustion requirement plays a critical role in the reform process. The United States Court of Appeals for the Eighth Circuit has explained this important role as follows:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some

frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Johnson v. Jones*, 340 F.3d 624, 626-27 (8th Cir. 2003); *see also Woodford*, 548 U.S. at 88 ("Exhaustion gives an agency 'an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court,' and it discourages 'disregard of [the agency's] procedures.'") (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). Accordingly, Plaintiff's claims against Defendants Lockey, Loveday, Cunningham, and Futrell should be dismissed without prejudice for failure to exhaust his administrative remedies.

        2.      Lack of Subject Matter Jurisdiction and Qualified Immunity

Defendants Lockey, Loveday, Cunningham, and Futrell have offered alternative arguments for dismissal. However, pursuant to *Johnson*, 340 F.3d at 627-28, once a determination is made that the plaintiff's claims were not exhausted, the Court is required to dismiss them without further consideration. Therefore, I decline to address these additional arguments.

    **B.**    **Defendant United States of America**

The United States seeks summary dismissal on two points. First, it argues Plaintiff has failed to meet his burden of proof for an action for medical injury because he has no expert testimony to support his case as required by law. (Doc. No. 33 at 1-2.) The United States points out Arkansas law requires expert testimony to prove the elements of medical negligence – the standard of care, a deviation therefrom, and proximate cause – when the asserted negligence does not lie within the jury's comprehension as a matter of common

knowledge. Ark. Code Ann. § 16-114-206(a). Second, the United States argues summary judgment is required because Plaintiff has failed to meet proof with proof. (Doc. No. 33 at 2-3.) The United States submits the Declaration of Te Cora Ballom, D.O., along with Plaintiff's medical records, to demonstrate the medical care providers at the prison were within the standard of care in their treatment of Plaintiff's injury and there was nothing they did or did not do that caused Plaintiff any injury he would not otherwise have had. (*Id.*, Doc. No. 38.)

    1.  Medical Expert

In cases under the FTCA, courts are bound to apply the law of the state in which the acts complained of occurred. *Goodman v. U.S.*, 2 F.3d 291, 292 (8th Cir. 1993) (citing 28 U.S.C. § 1346(b)). Arkansas law provides as follows:

> (a) In any action for medical injury, when the asserted negligence does not lie within the jury's comprehension as a matter of common knowledge, the plaintiff shall have the burden of proving:
>
>  (1) By means of expert testimony provided only by a medical care provider of the same specialty as the defendant, the degree of skill and learning ordinarily possessed and used by members of the profession of the medical care provider in good standing, engaged in the same type of practice or specialty in the locality in which he or she practices or in a similar locality;
>
>  (2) By means of expert testimony provided only by a medical care provider of the same specialty as the defendant that the medical care provider failed to act in accordance with that standard; and
>
>  (3) By means of expert testimony provided only by a qualified medical expert that as a proximate result thereof the injured person suffered injuries that would not otherwise have occurred.

10

Ark. Code Ann. § 16-114-206(a)(1)-(3).[1]

The United States acknowledges treatment for a finger laceration is "arguably common among the knowledge of lay people." (Doc. No. 34 at 7.) However, it notes Arkansas law requires expert medical testimony in "[t]he vast majority" of cases, *Mitchell v. Lincoln*, 366 Ark. 592, 599 (2006), and it contends expert medical testimony should be required here because Plaintiff's allegation is that prison medical care providers failed to give him more aggressive treatment than what is commonly done. (Doc. No. 34 at 7.) I disagree. The allegation in Plaintiff's Complaint is that prison medical care providers failed to treat his finger laceration properly – in other words, in a way that would have prevented infection. This is a relatively simple allegation, and I find proper wound care to be a matter within the comprehension of a jury of lay people. Simply stated, it is common knowledge that a wound should be cleaned, dressed, and protected.

Additionally, Plaintiff repeatedly requested the appointment of counsel (Doc. Nos. 24, 25, 27) and I denied those requests (Doc. No. 28). Had I appointed counsel, Plaintiff likely would have been able to obtain the testimony of a medical expert. Therefore, summary dismissal on this basis would not be fair. Accordingly, I recommend the United States' Motion for Summary Judgment be denied on this basis.

---

[1] *See Broussard v. St. Edward Mercy Health Sys., Inc.*, 2012 Ark. 14, at 7-8 (finding unconstitutional the provisions in section 16-114-206(a) that provide expert testimony may only be given by medical care providers of the same specialty as the defendant, but finding the remainder of section 16-114-206(a)(1)-(2) unaffected by the decision).

11

2.     Failure to Meet Proof with Proof

The United States next argues it has properly supported its Motion for Summary Judgment with the Declaration of Dr. Te Cora Ballom and Plaintiff's medical records, and Plaintiff has failed to meet proof with proof by showing a genuine issue as to a material fact.  *See Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 909-10 (8th Cir. 2010). According to the United States, Dr. Ballom's testimony and Plaintiff's medical records show prison medical care providers appropriately managed and treated Plaintiff's injury. (Doc. No. 34 at 10.)  I have carefully reviewed this evidence.  (Doc. No. 38.[2])  For the following reasons, I find summary judgment should be granted on this basis.

Plaintiff reported to Health Services on April 24, 2015, stating he had cut his left index finger while stripping headphone wires with a razor blade.  (Docs. No. 2 at 8, 38 at ¶ 3.)  He had a five-millimeter long superficial laceration to the first joint.  (*Id.*)  The laceration was cleaned with wound cleanser, closed with a steri-strip, and covered with a band-aid.  (*Id.*)  Plaintiff was counseled on wound care and told to return immediately if his condition did not improve.  (*Id.*)  Plaintiff alleges he requested a "lay-in" for the next two days so he would not have to work his kitchen shift, which required him to wash pots and pans in dirty water, but this request was denied.  (Doc. No. 2 at 4.)

Plaintiff returned to Health Services after hours on April 27, 2015, stating his finger was hurting and swollen.  (Doc. Nos. 2 at 8, 38 at ¶ 4.)  The finger was found to be red,

---

[2]Because of privacy concerns, the United States filed Dr. Ballom's Declaration and Plaintiff's medical records under seal.  (Doc. Nos. 36-37.)

12

hot, and swollen.  (*Id*.)   Plaintiff was instructed to keep the area clean, keep his left hand elevated above his heart, apply moist heat to it that night, and follow up the next morning with a mid-level practitioner.  (*Id*.)   He was also prescribed ibuprofen.  (*Id*.)

Plaintiff was seen by a medical doctor the morning of April 28, 2015.  (Doc. Nos. 2 at 5, 38 at ¶ 5.)  Plaintiff complained of sharp, consistent pain and stated the ibuprofen had not helped; he denied any fever or chills.  (Doc. No. 38 at ¶ 5.)   The doctor diagnosed Plaintiff with "[c]ellulitis and abscess of finger" and prescribed Bactrim (Sulfamethoxazole) and Doxycycline.  (*Id*., Doc. No. 2 at 5.)   The doctor obtained a culture, ordered an x-ray, and instructed Plaintiff to report for daily dressing changes for ten days.  (*Id*.)   According to Plaintiff, he did not actually receive a prescription for Bactrim or Doxycycline; instead, he was given just two Doxycycline tablets.  (Doc. No. 2 at 5.)   Plaintiff also alleges he was evaluated again on April 29, 2015, and was given two "Cipro" pills; however, there is no mention of this visit in the medical records.  (Doc. No. 2 at 5-6.)

On April 30, 2015, Plaintiff was evaluated for "increased swelling, redness and purulent drainage" of the finger.  (Doc. No. 38 at ¶ 6.)   The surgeon on site recommended sending Plaintiff to the local emergency room for evaluation and treatment.  (*Id*. at ¶ 7.) Plaintiff was transported to Forrest City Medical Center that day and was admitted for intravenous antibiotics and possible incision and drainage of the wound.  (*Id*. at ¶ 8.) Plaintiff underwent the incision and drainage procedure at Forrest City Medical Center on May 4, 2015.  (*Id*. at ¶ 10.)   He remained in the hospital until May 11, 2015.  (*Id*. at ¶ 11.)   Upon discharge, he was ordered to take Ciprofloxacin and ibuprofen for seven days

and was instructed to return to Health Services daily for evaluation and dressing changes. (*Id*.) Some improvement was noted at Plaintiff's visits to Health Services on May 12 and 13, 2015. (*Id*. at ¶ 12.) At his visit on May 18, 2015, Plaintiff reported continued swelling and inability to flex or extend the finger. (*Id*. at ¶ 13.) He was referred to an outside orthopedist for evaluation and a possible MRI. (*Id*.)

An MRI performed on May 19, 2015, revealed abnormal findings in the bone and soft tissue. (*Id*. at ¶ 14.) Plaintiff was admitted to Delta Medical Center in Memphis that day and began a regimen of intravenous antibiotics that was expected to last about a month. (*Id*. at ¶ 15.) However, in early June, Plaintiff opted to have his left index finger amputated rather than continue with prolonged antibiotic therapy. (*Id*. at ¶ 16.) The orthopedist informed Plaintiff he would continue to make some progress, but Plaintiff was "adamant" the finger be amputated because the numbness and stiffness rendered it useless; Plaintiff was also concerned the finger would interfere with his safety in prison because he would be unable to protect himself in a fight. (*Id*.) Plaintiff's finger was amputated on June 3, 2015, and he was discharged back to FCI-Forrest City that same day. (*Id*. at ¶ 17, Doc. No. 2 at 6.) He received daily dressing changes until the sutures were removed. (*Id*.)

According to the testimony of Dr. Ballom, Regional Medical Director for the Federal Bureau of Prisons, South Central Region, and Acting Clinical Director at FCI-Forrest City, the medical care providers at the prison were within the standard of care in their treatment of Plaintiff's injury. (Doc. No. 38 at ¶ 19.) Plaintiff has failed to rebut this evidence with evidence of his own that would permit a finding in his favor on more

than mere speculation, conjecture, or fantasy. *Mann*, 497 F.3d at 825. In other words, he has failed to demonstrate the existence of a genuine issue of material fact.

Plaintiff does make reference in his Complaint to his alleged request for a work release at his initial clinical encounter. (Doc. No. 2 at 4.) However, even assuming this request was made and denied, Dr. Ballom's testimony indicates a five-millimeter superficial cut – which at that point had not yet become infected – would likely not be considered sufficient cause to grant such a request. (Doc. No. 38 at ¶ 3.) In addition, while Plaintiff alleges he was not actually given the prescriptions for Bactrim and Doxycycline on April 28, 2015, but was given two Doxycycline tablets instead (Doc. No. 2 at 5), I note he was transported to the local emergency room two days later. (Doc. No. 38 at ¶ 8.) Upon discharge, he was instructed to "[s]top [t]aking" the Bactrim and Doxycycline. (*Id*. at Attachment 9.) Finally, to the extent Plaintiff challenges the amputation itself, the record evidence demonstrates this procedure was performed at Plaintiff's request, against the advice of his treating orthopedist. (*Id*. at ¶ 16.) Other than these unsupported allegations in his Complaint, Plaintiff has not alleged or shown how any provider deviated from the standard of care in the treatment of his injury.

I understand Plaintiff's dismay at having a minor cut on his finger become so badly infected that his only recourse was to undergo prolonged antibiotic therapy. But there is simply no evidence this infection was caused or worsened by any negligence attributable to the United States. Rather, as articulated by Regional Counsel for the Federal Bureau of Prisons in denying Plaintiff's administrative claim, the infection was "aggressive and recurrent in spite of the antibiotic treatment," and this was "the result of the nature of the

15

infection, not any inappropriate medical care." (Doc. No. 2 at 10.)  As the evidence recounted above demonstrates, Plaintiff's cut was appropriately cleaned and bandaged at his initial clinical encounter, oral antibiotics were ordered at the first sign of infection, and intravenous antibiotics were ordered when the infection persisted.  Plaintiff has not identified any other course of treatment that might have prevented the worsening of the infection.

In sum, the evidence presented by the United States – specifically, Plaintiff's own medical records – shows Plaintiff received appropriate treatment for the laceration to his finger.  Plaintiff's unsupported statements to the contrary are insufficient at the summary judgment stage.  *See Conseco Life Ins. Co.*, 620 F.3d at 909 (quoting *Flentje v. First Nat'l Bank of Wynne*, 340 Ark. 563, 569 (2000) ("When the movant makes a prima facie showing of entitlement to summary judgment, the respondent must discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as to a material fact.")).  Therefore, the United States is entitled to summary judgment on Plaintiff's FTCA claim.

## V. CONCLUSION

IT IS, THEREFORE, RECOMMENDED that:

1. Defendants Lockey, Loveday, Cunningham, and Futrell's Motion for Summary Judgment (Doc. No. 21) be GRANTED.

2. Plaintiff's claims against Defendants Lockey, Loveday, Cunningham, and Futrell be dismissed without prejudice.

3. Defendant United States of America's Motion for Summary Judgment (Doc.

No. 33) be GRANTED.

4. Plaintiff's FTCA claim against the United States be dismissed with prejudice.

5. The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order adopting these recommendations would not be taken in good faith.

DATED this 6th day of September, 2017.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE